BENJAMIN HINCKLEY *vs*. MATILDA G. PHELPS.

The assignee of an insolvent debtor cannot maintain a writ of entry against the debtor's wife to recover possession of land conveyed to her, which was paid for by her in part with money earned by her own labor, before the passage of *St*. 1855, *c*. 304, and deposited by her under another name in a savings bank, and afterwards invested in a note payable to her or her order, and in part with money earned by her after the passage of that statute, by keeping boarders on her own account, if her husband knew of and assented to all these transactions, and she took the conveyance without any design or intent to defraud his creditors; although her husband always lived with her, and while she kept boarders paid her for his board, and she purchased of him groceries for use in keeping the boarders.

WRIT OF ENTRY by the assignee of Ephraim S. Phelps, an insolvent debtor, against the wife of Phelps, to recover possession of land alleged to have been paid for by him, but conveyed to the tenant for the purpose of fraudulently securing the same from attachment by his creditors.

Ephraim S. Phelps and the tenant were married in 1845, and have ever since lived together as man and wife. After the marriage, the tenant by her own labor earned money, which was deposited in the Provident Institution for Savings in the name of Mary M. Hall, and which, in September 1857, amounted, with interest, to $671.59. The amount was then drawn out, and invested in a note of the city of Boston payable to her or her order. After the passage of *St*. 1855, *c*. 304, she also earned money by keeping boarders on her own account — she making the bargains, paying the expenses and receiving the money. Her husband paid her as a boarder at the rate of seven dollars a week, and she bought groceries of him for use in keeping the boarders, and paid him therefor. The husband knew of all her earnings and deposits, and assented to her holding the same as her own property.

The tenant claimed title to the premises by virtue of a mortgage to her from Michael Tighe, the former owner thereof, dated January 7, 1858, to secure $200 lent to him by her, and a deed from him dated February 13, 1858. The consideration of the deed was $1100, and was paid with the money received

7 *

by her from the city note, and a small sum earned by keeping boarders; by cancelling the prior mortgage; and with a note of her husband for the residue—this note being in part payment of money which she had earned by keeping boarders and lent to him. All these transactions were known by her husband, and it was admitted that she believed the whole consideration paid for the deed to be legally her own separate property, and that the conveyance was made without any design or intent to defraud creditors, unless in view of the facts, the transactions are in law fraudulent.

On the 7th of May 1858 Phelps presented his petition as an insolvent debtor, and the plaintiff was chosen assignee of his estate on the 1st of June following.

Upon these facts, it was agreed at the trial in the superior court, before *Lord*, J., that a verdict should be taken for the tenant, and the case reported for the determination of this court.

*H. G. Hutchins & F. W. Hurd*, for the demandant. By the common law, the money earned by the tenant and deposited in the institution for savings became vested in her husband. *Ames v. Chew*, 5 Met. 320. *Davis v. Newton*, 6 Met. 537. And see *St.* 1846, *c.* 209, § 2. Money earned by her by keeping boarders, under the circumstances stated, would belong to her husband. The *St.* of 1855, *c.* 304, § 7, should be construed with strictness. *Swift v. Luce*, 27 Maine, 285. *Howe v. Wildes*, 34 Maine, 573. The statute gives no authority for such mutual dealings between husband and wife as are here disclosed. If the right exists, the remedy by suit would follow. The *St.* of 1844, *c.* 107, contemplates a fraudulent design and purpose on the part of the debtor alone, and not on the part of the grantee. The present case finds that the debtor knew of all the transactions connected with the conveyance of the premises, and the conveyance was therefore fraudulent, within the meaning of the statute, as to his creditors.

*H. W. Paine*, (*T. F. Nutter* with him,) for the tenant. The demandant shows no title, because it expressly appears that the conveyance was made without any design or intent to defraud creditors. *Sts.* 1838, *c.* 163, § 5; 1844, *c.* 107, § 1. The tenant

acquired a good title, both under the mortgage and the deed. That part of the purchase money which was earned after the passage of *St.* 1855, *c.* 304, was her own, by the force of the statute. That part which was earned before the passage of *St.* 1855 was her own by her husband's consent, and by *St.* 1857, *c.* 249, § 1, ceased to be liable for his debts. *Fisk* v. *Cushman,* 6 Cush. 20. *Stanwood* v. *Stanwood,* 17 Mass. 57. *Adams* v. *Brackett,* 5 Met. 280. *Ames* v. *Chew,* 5 Met. 320.

DEWEY, J. There was no legal title to the premises demanded in this writ of entry that was the subject of attachment or levy of execution as the property of Ephraim S. Phelps, the insolvent debtor, of whose estate the demandant is assignee.

The facts agreed and stated for the consideration of the court, as to the manner in which the title of the tenant was acquired, fail to bring the case within the provisions of *St.* 1844, *c.* 107. If the assignee of the insolvent debtor has any remedy to recover of Mrs. Phelps any part of the money that was applied in payment for this real estate, it must be in some other form than by a writ of entry. *Judgment on the verdict for the tenant.*